UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

THE NEW YORK BAKERY OF SYRACUSE, INC.,[1]

Debtor.

Case No. 21-30770
Chapter 11 Case

## LOCAL RULE 2015-2 AFFIDAVIT OF CHRIS CHRISTOU IN SUPPORT OF CHAPTER 11 PETITION AND FIRST DAY MOTIONS

STATE OF NEW YORK      )
COUNTY OF ONONDAGA   ) .SS:

I, Chris Christou, being duly sworn, deposes and says as follows:

1. I am the president of The New York Bakery of Syracuse, Inc., the above-captioned debtor and debtor in possession (the "Debtor").

2. In that capacity, I am familiar with the history, day-to-day operations, and business affairs of the Debtor.

3. I make this Affidavit (the "Affidavit") on behalf of the Debtor in compliance with Rule 2015-2 of the Local Bankruptcy Rules for the Northern District of New York (the "Local Rules") and in support of the Debtor's chapter 11, subchapter V, petition to be filed by the Debtor on October 4, 2021 (the "Petition Date") and in support of the first-day motions filed in this case.

4. Unless otherwise stated in this Affidavit, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto. To the extent that any

---

[1] The last four digits of the Debtor's federal tax identification number are 4369.

13004743.2

information disclosed herein requires subsequent amendment or modification, one or more supplemental affidavits will be submitted to the court reflecting same.

5. The primary purpose of the Debtor's bankruptcy filing is to maximize the value of its estate by selling substantially all of its assets as a going concern to a third party in order to preserve the value of the assets, preserve the jobs of twenty-seven employees, maintain its customer relationships, and provide for payments to benefit its creditors.

## BACKGROUND

6. The Debtor is an independently owned commercial bakery which, for the past ninety years, has specialized in the production and distribution of fresh and frozen breads and rolls to businesses across the eastern United States. The Debtor sells its bakery products to food distributors and wholesalers whose primary customers include supermarkets, restaurants, delis, and schools. The Debtor's fiscal year runs from October 1 through September 30.

7. The Debtor maintains a principal place of business on real property which it owns located at 310 Lakeside Road, Syracuse, New York 13209 (the "Real Property").[2] The Real Property is improved by a 30,000 square foot bakery and distribution facility (the "Facility"). The Debtor also owns personal property consisting of cash, accounts receivable, inventory, machinery, equipment, furniture, fixtures, intellectual property, and other assets (collectively, the "Personal Property"). The Real Property and Personal Property are, collectively, the "Assets".

8. As of the Petition Date, the Debtor is indebted to New York Business Development Corporation d/b/a Pursuit BDC ("Pursuit") (a) in the approximate amount of $1,005,220.53 under a Note and a Loan and Security Agreement dated July 26, 2013 ("Term

---

[2] The Debtor acquired the Real Property from its non-debtor affiliate, Christou Associates, on September 28, 2021 so that the Real Property could be included in a going concern sale of the Assets. The Real Property was Christou Associates' sole asset and the acquisition was subject to all existing real property taxes, mortgage liens, and judgments filed against the Real Property.

13004743.2                                                         2

Loan #1"), (b) in the approximate amount of $2,335,031.55 under a Note and a Loan and Security Agreement dated August 16, 2018 ("Term Loan #2"),[3] and (c) approximately $547,000.00 under a Collateral Mortgage covering the Real Property dated July 26, 2013 (the "Collateral Mortgage", and collectively with Term Loan #1 and Term Loan #2, the "Pursuit Obligations"). Repayment of the Pursuit Obligations is secured by perfected first and second position liens and security interests in the Personal Property and by the Collateral Mortgage.

9. As of the Petition Date, the Debtor is indebted to Solvay Bank in the approximate amount of $850,000.00 under a Business Loan Agreement dated August 16, 2018 (the "Revolver Loan"). Repayment of the Revolver Loan is secured by a perfected first position lien and security interest granted in favor of Solvay Bank on the Debtor's cash, accounts receivable, and inventory. Solvay Bank is also a 50% participant with Pursuit in the Pursuit Obligations. Pursuit and Solvay Bank are, hereinafter, the "Prepetition Secured Lenders".

10. As a result of a steep decline in financial performance over the past year due to the COVID-19 pandemic, on December 11, 2020, the Debtor engaged the services of Canty Consulting ("Canty") to assess the Debtor's business plan, its underlying financial projections, liquidity management and outlook, and to aid in the marketing of substantially all of the Assets to prospective purchasers.

11. Given the nature of the Debtor's business and the type of Assets, including the fact that the Facility is configured and designed solely to produce and distribute baked goods, there is a limited pool of potential purchasers for the Assets. Prior to the bankruptcy filing, as part of its effort to address the Debtor's financial situation, I contacted several other commercial bakeries as potential purchasers of the Assets. Unfortunately, these potential purchasers either

---

[3] On June 22, 2021, Pursuit obtained a judgment against the Debtor and other co-defendants in the amount of $2,335,031.55 in connection with Term Loan #2.

13004743.2                                          3

were not interested in the size or location of the Debtor's business or were suffering from financial difficulties for the same reasons as the Debtor. Consequently, the Debtor's marketing process yielded only one indication of interest in the Assets, from TI-MA Holdings, LLC (the "Purchaser"). The Purchaser is a third-party purchaser whose managing member, Peter Mattheos, resides in Indiana and is related to the Debtor's principals as their maternal aunt's second husband.

12. The Debtor is in the process of finalizing an Asset Purchase Agreement (the "Purchase Agreement") with the Purchaser for the sale of the Assets at a purchase price of $1,513,979.93 and will file a motion shortly after the Petition Date seeking to approve the private sale of the Assets to the Purchaser under sections 363 and 365 of the Bankruptcy Code. In light of the facts that the Debtor's business operation is rapidly running out of operating cash and its value is deteriorating, it risks losing valuable customers if the unknowns associated with an auction sale of the Assets is introduced into the sale process,[4] and the Prepetition Secured Lenders support a private sale, the Debtor respectfully submits that a private sale of the Assets is appropriate under the circumstances.

13. In addition to purchasing the Assets, the Purchaser has agreed to provide prepetition and post-petition financing to the Debtor in an amount up to $200,000.00 (the "Financing") in order to ensure that the Debtor has sufficient working capital, is able to operate as a going concern until the sale closing date, and is able to satisfy administrative expense claims

---

[4] If the Debtor's customers become insecure about whether the Debtor can continue to produce their required products or if the identity of the entity who will ultimately produce their products is not readily ascertainable, the customers will seek stability and will likely move their accounts to another commercial bakery. As the lead time for a customer to identify another bakery and set up production of its required products is between six and nine months, certain customers will likely move their accounts to other bakeries immediately upon learning that the Assets will be auctioned, thus significantly reducing the Debtor's going concern value. As shown on the operating statement attached hereto as Exhibit B, the Debtor's gross revenue for the month of August 2021 was $399,672.08, its cost of sales was $263,829.46 and its operating expenses, including interest expense, was $124,812.63. The Debtor's net income was $11,029.99. Accordingly, the loss of only a small amount of revenue – one or two customers – will adversely impact the value of the Assets.

13004743.2                                                              4

incurred in connection with the chapter 11 case. The Financing will not need to be repaid by the Debtor if the Purchaser is the successful purchaser of the Assets. In addition, the Prepetition Secured Lenders have agreed to provide a carve-out for the benefit of the Debtor's creditors in the amount of $100,000.00 (the "Estate Carve-Out").

14. Immediately following the approval of the asset sale, the Debtor intends to file a Small Business Chapter 11 Plan which will provide for payments to creditors from the asset sale proceeds, the Estate Carve-Out, and chapter 5 recoveries.

## FIRST-DAY MOTIONS

15. On the Petition Date, the Debtor filed with the Bankruptcy Court the following motions seeking interim, and ultimately final, relief in order to ensure a smooth transition into chapter 11 and the proper administration of the Debtor's case:

a) *Emergency Motion for Entry of an Order: (I) Authorizing the Debtor to Use Cash Collateral on an Interim Basis; (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 105, 361, and 363; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief;*

b) *Motion for Orders (I) Authorizing Debtor to Pay Prepetition Wages, Salaries, and Benefits; (II) Authorizing the Continuation of Employee Benefit Programs in the Ordinary Course of Business; and (III) Directing Banks to Honor Prepetition Checks for Payment of Prepetition Wage, Salary, and Benefit Obligations;*

c) *Motion for Orders Authorizing (I) Continued Maintenance of Existing Bank Accounts; (II) Continued Use of Existing Cash Management System; and (III) Continued Use of Existing Business Forms; and*

d) *Motion for Order (I) Authorizing Continuation of Various Insurance Policies; and (II) Authorizing Payment of Prepetition and Post-Petition Obligations in Respect Thereof.*

16. On the Petition Date, the Debtor also filed a *Motion for Entry of an Order (A) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Services to and/or Discriminating Against the Debtor on Account of Prepetition Amounts Due; (B) Determining that the Debtor's Utilities are Adequately Assured of Future Payment; and (C) Authorizing the Debtor to Pay Adequate Assurance Deposits*, which motion will be returnable later in October.

17. In accordance with Local Rule 2015-2, the Debtor states as follows:

   a) The Debtor filed all of its required Summaries, Schedules, and the Statement of Financial Affairs on the Petition Date. *See* Docket No. 1.

   b) None of the Debtor's property is in the hands of a custodian, public officer, mortgagee, or any pledgee, nor is there any assignment of rents or any other property held by a secured creditor or agent.

   c) The Debtor currently has twenty-seven active employees. Twenty-one employees are hourly wage earners, while the remaining six employees are salaried personnel. All of the Debtor's employees are non-union employees.

   d) The estimated weekly payroll for the Debtor over the next 30 days totals approximately $112,000.00 ($28,000.00 per week).

   e) The Debtor generated $2,530,235.61 in revenue during the first eleven months of its current fiscal year.

   f) Other than my weekly gross salary of $750.00, no officer, stockholder, or director of the Debtor, nor any consultant, will be paid in the 30-day period following the Petition Date.

13004743.2

6

18. Pursuant to 11 U.S.C. § 1116(1)(A), the Debtor provides the following:

   a) A copy of the Debtor's most recent balance sheet dated August 31, 2021 attached hereto as **Exhibit A**.

   b) A copy of the Debtor's most recent operating statement dated August 31, 2021 attached hereto as **Exhibit B**.

   c) A copy of the Debtor's cash flow statement for the period ending August 31, 2021 attached hereto as **Exhibit C**. The Debtor does not anticipate any additional accrued but unpaid obligations other than professional fees.

   d) A redacted copy of the Debtor's most recent tax return for the fiscal year ending September 30, 2020 attached hereto as **Exhibit D**.

*/s/ Chris Christou*

Sworn to before me this
1st day of October, 2021.

*/s/ Camille W. Hill*
Notary Public

CAMILLE W. HILL
Notary Public, State of New York
Qualified in Onondaga Co. No. 02HI4952213
My Commission Expires June 12, 2023

13004743.2

7